

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.   Criminal No. **3:13CR87**

**LARRY LAWSON TAYLOR, JR.,**

Petitioner.

## MEMORANDUM OPINION

Larry Lawson Taylor, Jr., a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 71).[1] Taylor contends that the Court made various errors at his sentencing, and that he received the ineffective assistance of counsel prior to and at sentencing. Specifically, Taylor argues:[2]

    Claim One:    The District Court committed sentencing errors because:
(a) his "guidelines produced a sentence greater than necessary to satisfy [18 U.S.C. §] 3533(a);"
(b) the District Court "did not adequately explain the reasonableness of [Taylor's] sentence . . . according to [18 U.S.C. §] 3533(a);"
(c) the District Court "did not take [Taylor's] evidence into consideration at sentencing in light of 18 U.S.C. [§] 3661;" and,
(d) the District Court "violated Rule 609(2) by not allowing evidence to be admitted or considered for the purpose of imposing an appropriate sentence." (§ 2255 Mot. 4.)

    Claim Two:    Taylor received the ineffective assistance of counsel because counsel failed to "conduct a reasonable investigation into

---

[1] The Court employs the pagination assigned to Taylor's § 2255 Motion by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in the quotations from Taylor's submissions.

[2] The Court notes that the four numbered claims listed in Taylor's § 2255 Motion are repetitive and confusing. Nevertheless, in light of the arguments in Taylor's Memorandum in Support of his § 2255 Motion (ECF No. 87), the Court has divided Taylor's claims into two main claims, each with several subparts.

> mitigating evidence" before sentencing and failed to present mitigating evidence at sentencing (*id.* at 7), such as:
> (a) evidence of his childhood upbringing and abuse and evidence of the psychiatric effect of such childhood abuse (Mem. Supp. § 2255 Mot. 1); and,
> (b) evidence of the "coercion and duress" Taylor faced at the time of the crime for which he was convicted (*id.* at 5).

The Government has responded, arguing that Taylor has procedurally defaulted Claims One (a) through (d), and that his claims of ineffective assistance of counsel are meritless. (ECF No. 79.) In support of its argument, the Government has submitted an affidavit from Jeffrey L. Everhart, Taylor's sentencing counsel. ("Everhart Aff.," ECF No. 79–1.) Taylor replied to the Government's Response with a Memorandum in Support of his § 2255 Motion. (ECF No. 87.) The matter is ripe for disposition.

## I. PROCEDURAL HISTORY

On May 7, 2013, Taylor was named in a one-count Indictment charging him with possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). (Indictment 1, ECF No. 13.) On June 18, 2013, Taylor pled guilty to the one-count Indictment. (Plea Agreement ¶ 1, ECF No. 18.) In his Plea Agreement, Taylor waived his right to appeal. (*Id.* ¶ 5.)

On October 24, 2013, Taylor's counsel submitted a Motion for a Psychiatric Exam of Taylor and a Motion to Withdraw as Counsel. (ECF Nos. 37–38.) Thereafter, counsel filed amended versions of these two Motions. (ECF Nos. 39–40.) On November 4, 2013, the Court granted both Motions. (ECF Nos. 43–44.) That same day, the Court appointed new counsel for Taylor. (ECF No. 45.)

2

On December 13, 2013, the Court received the report of Taylor's psychiatric exam. (ECF No. 47.) This report was issued by Evan S. Nelson, Ph.D. (*Id.* at 10.) Also on December 13, 2013, Taylor moved for a second psychiatric exam. (ECF No. 46.) On January 13, 2014, the Court held a status conference and heard from Taylor about why he requested a second psychiatric exam. (*See* Jan. 13, 2014 Tr. 1–7, ECF No. 62; ECF No. 50.) After hearing from Taylor and his counsel, the Court granted Taylor's request for a second psychiatric evaluation. (Jan. 13, 2014 Tr. 7–8.) On March 6, 2014, the Court received the second psychiatric report. (ECF No. 51.) This report was issued by Ahmed Sherif Abdel Meguid, MD, FRCPC. (*Id.* at 9.)

On April 14, 2014, the Court conducted a sentencing hearing. (*See* Apr. 14, 2014 Tr. 2, ECF No. 61.) The Court entered judgment against Taylor and sentenced him to 130 months of imprisonment and four years of supervised release. (J. 2–3, ECF No. 53.) Taylor appealed. (ECF No. 55.)

On appeal, Taylor's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there were no meritorious grounds for appeal but questioning whether the Court appropriately considered the statutory sentencing factors. *United States v. Taylor*, 585 F. App'x 159, 159 (4th Cir. 2014). Taylor also filed a *pro se* supplemental brief, wherein he alleged that he was improperly sentenced because the Court did not subpoena his psychiatrist or consider his mitigating evidence at sentencing, and because his counsel did not properly prepare and present mitigating evidence. *Id.* On November 6, 2014, the United States Court of Appeals for the Fourth Circuit held that Taylor's appellate waiver was valid and dismissed Taylor's appeal. *Id.* at 159–60.

3

## III. ANALYSIS

### A. Claim One (a) through (d)

The Government argues that Taylor has procedurally defaulted Claims One (a) through (d) because Taylor waived his right to appeal and he fails to demonstrate cause and prejudice to excuse his default. The Court agrees that the procedural default rule bars Claims One (a) through (d) from review here, absent a showing of cause and prejudice or actual innocence, because Taylor could have raised, but did not raise, these claims on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *see also United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (explaining that a petitioner who waives the right to appeal "is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that could have been raised on appeal."). Taylor has failed to make any argument or showing that would excuse his default. Accordingly, Claims One (a) through (d) are procedurally defaulted and barred from review here. Taylor's Claims One (a) through (d) will be DISMISSED.

### B. Claim Two (a) and (b)

In Claim Two, Taylor alleges that he received the ineffective assistance of counsel prior to and at sentencing. (§ 2255 Mot. 5, 8.) Specifically, Taylor claims that counsel failed to "conduct a reasonable investigation into mitigating evidence" before sentencing and failed to present various mitigating evidence at sentencing. (*Id.* at 8.)

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the

4

deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

"It is well settled that defense counsel must conduct a reasonable investigation into mitigating evidence to be presented during the [sentencing] phase, and that failure to present mitigating evidence cannot be justified as a tactical decision unless the duty to investigate has been fulfilled." *United States v. Caro*, 102 F. Supp. 3d 813, 838–39 (W.D. Va. 2015) (citing *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003)), *aff'd* --- F. App'x ----, No. 16–1, 2018 WL 2113285, at *1 (4th Cir. May 8, 2018). The prevailing question is "whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the petitioner's] background was *itself reasonable*." *Wiggins*, 539 U.S. at 523. However, counsel's actions are assessed in light of context and the facts "as seen from counsel's perspective at the time." *Id.* (citation and internal quotation marks omitted). "[P]rovided there is a conceivable strategic advantage to the decision not to introduce certain evidence in mitigation, that choice is virtually unassailable on collateral review." *Stout v. Netherland*, Nos. 95–4008, 95–4007, 1996 WL 496601, at *10 (4th Cir. Sept. 3, 1996) (citation omitted). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional

judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–691. The Supreme Court clarified that,

> [i]n other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 691. Further, counsel does not have to investigate every possible avenue of mitigation. *See id.*

### 1. Claim Two (a)

In Claim Two (a), Taylor alleges that sentencing counsel rendered ineffective assistance when he failed to investigate and submit evidence of Taylor's childhood upbringing and abuse. Specifically, Taylor alleges that "[c]ounsel never looked into [his] upbringing" and that "[c]ounsel never presented information about [his] upbringing or abuse" at sentencing. (Mem. Supp. § 2255 Mot. 1–2.) Taylor also argues that counsel was deficient for not submitting, as mitigating evidence of his troubled upbringing, numerous 911 phone calls from his childhood residence and the testimony of Dr. Meguid, who performed Taylor's second psychiatric exam. (*Id.* at 1–3.)

To begin, Taylor's allegation that counsel wholly failed to investigate and submit evidence of his childhood upbringing and abuse at his sentencing is belied by the record. Taylor's sentencing transcript reveals that counsel called as a witness Taylor's brother, Kevin Lamont Taylor. (*See* Apr. 14, 2014 Tr. 3.) Kevin testified about how Taylor's father attempted to kill Taylor's mother when Taylor was a child, and how Taylor's father, cousins, and grandfather exposed Taylor to drugs throughout his childhood. (Apr. 14, 2014 Tr. 4–6.) Moreover, at sentencing, Taylor's counsel moved the Court for a downward departure of the

applicable Sentencing Guidelines based on a previously submitted motion from Taylor's prior counsel. (*See* ECF No. 42; Apr. 14, 2014 Tr. 12, 17.) In the motion, Taylor's prior counsel argued, among other things, that "circumstances of [Taylor's] youth should be considered in crafting the appropriate sentence." (ECF No. 42, at 6.) The record therefore reveals that Taylor's counsel submitted evidence of Taylor's childhood at sentencing and argued for a downward departure based on this mitigating evidence. Thus, counsel conducted a reasonable investigation into Taylor's upbringing and was not deficient in his performance.

Nonetheless, Taylor argues that he "asked counsel to use his 911 phone calls to the residence [as evidence of] his dysfunctional up bringing" (Mem. Supp. § 2255 Mot. 1), and seemingly asserts that this evidence would have warranted a downward departure from his applicable Sentencing Guidelines. (*Id.* at 3.) However, the record reveals that after the Court denied Taylor's request for a downward departure, Taylor was given the opportunity to address the Court and he said the following:

> Taylor: Now I would like to present evidence of my role. I'd like to go back to my childhood abuse. And this is just an example. There is over 50-some 911 calls to the address about drugs that I faced. At 11 years old my father got me high and I still had to deal with that addiction mentally. . . .

(Apr. 14, 2014 Tr. 21.)

Taylor fails to demonstrate any resulting prejudice from counsel's failure to use the 911 phone calls as mitigating evidence at sentencing. Taylor does not explain, and the Court does not discern, how the introduction of the 911 phone calls create a reasonable probability that Taylor would have received a different sentence. Indeed, even after hearing Taylor mention the phone calls, the Court did not reconsider its denial of Taylor's request for a downward departure. Taylor, therefore, has failed to demonstrate both that counsel's performance was constitutionally

deficient and that Taylor was prejudiced by counsel's failure to introduce evidence of the 911 phone calls at Taylor's sentencing.

Finally, Taylor argues that counsel was also ineffective for failing to submit as mitigating evidence the testimony of Dr. Meguid, who performed Taylor's second psychiatric exam and issued the related report. (Mem. Supp. § 2255 Mot. 2–3.) Taylor argues that Dr. Meguid "may [have] provide[d] essential testimony on the effect of childhood abuse and etc," (*id.* at 2), and "psychiatrist testimony would share factors at sentenc[ing] of . . . child[hood] abuse and mental tra[u]ma. The tra[u]ma is a (psychiatry) painful emotional experience or shock, often producing a lasting psychic effect, and sometimes, a neurosis." (*Id.* at 3 (citation omitted).)

First, contrary to Taylor's argument, the Court received and reviewed a copy of Dr. Meguid's report before his sentencing. (*See* ECF No. 51.) Further, at the status conference prior to ordering the second psychiatric evaluation by Dr. Meguid, Taylor's counsel explained:

> [Taylor's Counsel]: Your Honor will recall that prior to counsel becoming involved in the case, Your Honor ordered an evaluation as to Mr. Taylor's mental status at the present time. Dr. Evan Nelson was appointed to do that evaluation. He did an evaluation. Both I and the United States have received that report, and I assume, based on the contents of that letter, that so has the Court. As you can see from that report, Dr. Nelson indicates that Mr. Taylor is competent, certainly, to assist in his representation and to go forward.
> Mr. Taylor, at least at one point in time, disputed that conclusion. And I believe he sent to the Court, because he sent to both counsel a copy of a motion, a pro se motion, handwritten, asking for a second psychiatric evaluation. And I believe he indicated in that motion that he would have his family have a psychiatrist, retain a psychiatrist to do that. To the best of my knowledge, that has not been done.
> I've spoken to [the United States Attorney] numerous times on this. I've spoken to Mr. Taylor. There seems to be some sort of disconnect between what I am advising Mr. Taylor to do and what he wants to do. And by

8

> that, I mean he sent me at least two pro se motions that would indicate a desire to go farther than I see we can go given Dr. Nelson's report. . . . I have some concerns about possible ramifications if he continues down the path he has, at least from my perspective, set out. And I think that's a perspective shared by the United States.
>
> In other words, I don't want this to get worse for Mr. Taylor because there are certain cases and case law that would indicate that if he does, he might face the danger of the United States being able to effectively argue that he is not accepting responsibility. And it is kind of a fine line in talking to Mr. Taylor and some of the things he writes, there is a certain portion of what he writes and what he desires that I think is relevant, and I've tried to explain to him that those are mitigating facts that I on his behalf can argue. Then I think we are okay, and then he comes back with another motion. Like I said, part of it seems to indicate he accepts that, but there is also a part that at least I interpret and I think the United States interprets as he wants to talk about competency at the time of the offense.

(Jan. 13, 2014 Tr. 2–4.)

Additionally, in the motion for a downward departure filed by Taylor's prior counsel and re-raised at his sentencing, Taylor requested that the Court "consider his history of mental illness and his contention that his mental health issues remain significant." (ECF No. 42, at 5.) Finally, Taylor's sentencing counsel explains that in his affidavit that,

> Dr. Meguid reported that Mr. Taylor does not exhibit any significant symptoms of PTSD. Dr. Meguid further opined that, "Mr. Taylor's main psychiatric issues at this time and historically have been Polysubstance Abuse/Dependence as well as Cluster B (Antisocial) and personality traits/disorder." He also reported Mr. Taylor denied possessing cocaine with intent to distribute, blaming his cousin and his girlfriend for his actions. Dr. Meguid concluded it was highly doubtful Mr. Taylor had any significant psychiatric illness (other than polysubstance abuse/dependence and personality issues) that would have caused him to have diminished capacity at the time of the offense.
>
> I advised Mr. Taylor that, in my opinion, the opinion[] offered by [Dr. Meguid] would not be helpful to his cause and could potentially be detrimental. Mr. Taylor said he understood and [d]id not offer any dissent.

(Everhart Aff. 3 (paragraph numbers omitted).)

The record establishes that Taylor's counsel was not deficient in his performance when he did not call Dr. Meguid to testify about the effect of Taylor's childhood at his sentencing. The record makes clear that counsel reasonably investigated the psychiatric effect of Taylor's childhood, and that a similar argument was made in a prior motion for a downward departure submitted to the Court and re-raised at Taylor's sentencing. Counsel made a reasonable strategic decision to omit Dr. Meguid's testimony lest the Court find that Taylor was not truly accepting responsibility for his criminal actions. Thus, counsel did not act deficiently. *See Stout*, 1996 WL 496601, at *10.

The record also establishes that Taylor fails to demonstrate any resulting prejudice from counsel's actions. Again, Taylor does not explain, and the Court does not discern, how Dr. Meguid's testimony creates a reasonable probability that Taylor would have received a different sentence. As anticipated by counsel, the Government could have relied upon Dr. Meguid's testimony as a basis for arguing that Taylor should not benefit from a two-point reduction in his Sentencing Guidelines for acceptance of responsibility.

For the foregoing reasons, Taylor fails to demonstrate both that counsel was constitutionally deficient in his performance and that Taylor was prejudiced by counsel's non-introduction of the aforementioned mitigating evidence. Accordingly, Taylor's Claim Two (a) will be DISMISSED.

### 2. **Claim Two (b)**

In Claim Two (b), Taylor argues that counsel failed to investigate and submit as mitigating evidence the "coercion and duress" that Taylor faced when he committed his underlying crime of conviction. (Mem. Supp. § 2255 Mot. 1.) However, for similar reasons as

explained above, Taylor fails to demonstrate both that counsel was deficient and that he was prejudiced by counsel's actions.

At sentencing, counsel carefully argued that "the reason [Taylor] sold [cocaine] to this young lady was that he was romantically involved with her." (Apr. 14, 2014 Tr. 14.) Further, in his motion for a downward departure, Taylor's former counsel asked the Court to consider "that [Taylor's] role in the offense was somewhat manipulated by his romantic relationship with the [confidential source]." (ECF No. 42, at 6.) However, as detailed above, sentencing counsel avoided placing too much emphasis on this alleged "coercion and duress" in order to ensure that Taylor received credit under the Sentencing Guidelines for acceptance of responsibility. (*See* Apr. 14, 2014 Tr. 21–22.) Counsel therefore made a reasonable strategic decision to ensure that Taylor received the sentencing benefit for acceptance of responsibility, and thus was not constitutionally deficient in his performance. *See Stout*, 1996 WL 496601, at *10.

Moreover, Taylor fails to demonstrate resulting prejudice. Again, the record reveals that even after Taylor, on his own initiative, explained to the Court in detail that he believed he was only "a middleman with no pecuniary gain from the crime" (Apr. 14, 2014 Tr. 20) and suggested that he was manipulated by the Government's confidential source (Apr. 14, 2014 Tr. 19–22), the Court did not reconsider its denial of his request for a downward variance. Taylor therefore fails to demonstrate that counsel was constitutionally deficient in his performance and that he was prejudiced by counsel's actions. Accordingly, Claim Two (b) will be DISMISSED.[3]

---

[3] In his claims for relief listed in his § 2255 Motion, Taylor also seemingly faults counsel for failing to introduce "victim impact evidence" at sentencing. (§ 2255 Mot. 5, 7.) However, Taylor makes no mention of this type of evidence in his Memorandum in Support of his § 2255 Motion. Further, victim impact statements and other related evidence are generally introduced at sentencing by the prosecution for the purpose of increasing a defendant's sentence. *See Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (explaining that "[v]ictim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question."). Because Taylor does not explain what "victim impact evidence"

## III. CONCLUSION

For the foregoing reasons, Taylor's § 2255 Motion (ECF No. 71) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[4]

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States District Judge

Date: JUN 26 2018
Richmond, Virginia

---

counsel should have introduced at sentencing and because the Court assumes Taylor does not intend to argue that the prosecution should have introduced such evidence, the Court declines to consider whether counsel was ineffective for failing to introduce victim impact evidence.

[4] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Taylor has not satisfied this standard.