IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.                                                                                                                **Criminal No. 3:13cr87**

**LARRY LAWSON TAYLOR, JR.,**

        **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on four *pro se* motions filed by Defendant Larry Lawson Taylor, Jr., in which he challenges the calculation of his criminal history category in his Presentence Report and asks the Court to correct his sentence pursuant to Federal Rule of Criminal Procedure 36. (ECF Nos. 96, 98, 99, 100.) The Probation Office filed a memorandum in response, indicating the Presentence Report erred in calculating Taylor's criminal history points when he came before this Court in 2013. (ECF No. 102.) The United States responded in opposition, advocating for finality and requesting the Court not disturb Taylor's sentence. (Opp'n, ECF No 103.) Taylor replied. (ECF Nos. 104, 105.) This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.

This postconviction case pits the principle of judicial finality against the precept of justice. Under the circumstances present here, finality must yield to justice. For the reasons that follow, the Court will grant in part and deny in part Taylor's *pro se* motions.

### I. BACKGROUND

On May 7, 2013, the United States named Taylor in a one-count Indictment charging him with possession with intent to distribute 28 grams or more of a mixture and substance containing

a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). (Indictment 1, ECF No. 13.) On June 18, 2013, Taylor pleaded guilty to the one-count Indictment. (Plea Agreement ¶ 1, ECF No. 18.) In his Plea Agreement, Taylor waived his right to appeal. (*Id.* ¶ 5.)

On August 16, 2013, the Probation Office prepared a Presentence Report ("PSR") for Taylor's case. (PSR, ECF No. 24.) The PSR calculated Taylor's Sentencing Guidelines range after copying his criminal history from a presentence report prepared in 2008. (*Id.* 7.) After receiving no objections to the initial PSR, the Probation Office provided its final PSR to the Parties and the Court. (PSR, ECF No. 26.) The PSR, for Taylor's case, calculated a Total Offense Level of 27. (*Id.* 26.) After compiling Taylor's prior convictions and sentences, the PSR determined that, based on 13 criminal history points, Taylor fell into Criminal History Category VI. (*Id.*) With a Total Offense Level of 27 and Criminal History Category VI, Taylor faced a Sentencing Guidelines range of 130 months to 162 months' imprisonment. (*Id.*)

In making Taylor's criminal history calculation, the PSR explained that "[m]uch of the information contained in [the criminal history] section of the report was obtained from the Federal presentence report prepared for this defendant in 2008, in Docket No. 3:08CR00143." (*Id.* ¶ 15.) The PSR included "Worksheet C (Criminal History)," which tabulated thirteen total criminal history points for Taylor based on his prior convictions and sentences. (*Id.* 30–33.) Worksheet C relied on:

> (1) a February 2003 sentence for attempting to elude, which resulted in two criminal history points;[1]

---

[1] At the time of Taylor's 2013 sentencing, United States Sentencing Guidelines Manual § 4A1.2(k) provided that

2

(2) a February 2004 sentence for identity fraud, which resulted in one criminal history point;

(3) a February 2004 sentence for eluding police, driving under the influence, and suspended operator's license with priors, which resulted in three criminal history points;

(4) a July 2005 sentence for a suspended operator's license and possession of marijuana, which resulted in two criminal history points;

(5) a June 2008 sentence for possession of a firearm by a convicted felon, which resulted in three criminal history points; and,

(6) two additional criminal history points for committing the instant offenses while under any criminal justice sentence, his supervised release term for being a felon in possession of a firearm.

(*Id.*) As noted in the PSR, thirteen or more criminal history points results in being placed in Criminal History Category VI. (*Id.* 33.)

On October 24, 2013, Taylor's then-counsel submitted a Motion for a Psychiatric Exam of Taylor and a Motion to Withdraw as Counsel. (ECF Nos. 37–38.) Thereafter, Taylor's then-counsel filed amended versions of these two Motions. (ECF Nos. 39–40.) On November 4,

---

[r]evocation of probation, parole, supervised release, special parole, or mandatory release may affect the time period under which certain sentences are counted as provided in §4A1.2(d)(2) and (e). For the purposes of determining the applicable time period, use the following: (A) in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence (see §4A1.2(e)(1)); (B) in the case of any other confinement sentence for an offense committed prior to the defendant's eighteenth birthday, the date of the defendant's last release from confinement on such sentence (see §4A1.2(d)(2)(A)); and *(C) in any other case, the date of the original sentence (see §4A1.2(d)(2)(B) and (e)(2)).*

U.S. Sent'g Guidelines Manual § 4A1.2(k) (U.S. Sent'g Comm'n 2013) (emphasis added). The original date of Taylor's February 2003 sentence therefore should have controlled, meaning it fell outside the ten year window and should not have been assessed two criminal history points. *See Id.* § 4A1.2(e)(2) ("Any other prior sentence [less than one year and one month] that was imposed within ten years of the defendant's commencement of the instant offense is counted.")

3

2013, the Court granted both Motions. (ECF Nos. 43–44.) That same day, the Court appointed new counsel for Taylor. (ECF No. 45.)

On December 13, 2013, the Court received the report of Taylor's psychiatric exam. (ECF No. 47.) That same day, Taylor moved for a second psychiatric exam. (ECF No. 46.) On January 13, 2014, the Court held a status conference to consider Taylor's request and arguments for a second psychiatric exam. (*See* Jan. 13, 2014 Tr. 1–7, ECF No. 62; *see also* Jan. 27, 2014 Order, ECF No. 50.) After hearing from Taylor and his counsel, the Court granted Taylor's request for a second psychiatric evaluation. (Jan. 13, 2014 Tr. 7–8.) On March 6, 2014, the Court received the second psychiatric report. (ECF No. 51.)

On April 14, 2014, the Court conducted a sentencing hearing. (*See* Apr. 14, 2014 Tr. 2, ECF No. 61.) The Court entered judgment against Taylor and sentenced him to 130 months of imprisonment, the low end of the Guidelines range, and four years of supervised release.[2] (J. 2–3, ECF No. 53.)

Taylor appealed. (ECF No. 55.) On appeal, Taylor's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that while no meritorious grounds for appeal existed, a question remained as to whether the Court appropriately considered the statutory sentencing factors. *United States v. Taylor*, 585 F. App'x 159, 159 (4th Cir. 2014). Taylor also filed a *pro se* supplemental brief, wherein he alleged that the Court erred and sentenced Taylor improperly because the Court did not subpoena his psychiatrist or consider his

---

[2] At the April 14, 2014 hearing, the Court also sentenced Taylor to a 14-month term, "consecutive to the 130 that was previously imposed," for violating his supervised release term from his 2008 criminal case. (Apr. 14, 2014 Tr. 32; *see also United States v. Taylor*, No. 3:08cr143, ECF No. 54.) Because the Court sentenced Taylor below the statutory maximum of 24 months and the revocation table range of 33 to 41 months, the error in his criminal history calculation does not affect his revocation sentence.

4

mitigating evidence at sentencing, and because his counsel did not properly prepare and present mitigating evidence. *Id.* On November 6, 2014, the United States Court of Appeals for the Fourth Circuit held that Taylor's appellate waiver in his plea agreement was valid and dismissed Taylor's appeal. *Id.* at 159–60. Thereafter, Taylor unsuccessfully sought § 2255 postconviction relief in the district court. *United States v. Taylor*, No. 3:13cr87, 2018 WL 3130417, at *6 (E.D. Va. June 26, 2018).

In April, June, and July of 2020, Taylor filed four *pro se* motions seeking postconviction relief based on his assertion that the Court miscalculated his Sentencing Guidelines range when it placed him in Criminal History Category VI. (ECF Nos. 96, 98, 99, 100.) In the Motions, Taylor raises three arguments concerning the calculation of his criminal history points. First, Taylor argues that two of his prior offenses for which he received points should not count against him because they "occurred on the same occasion and [as] a part of a single common scheme or plan." (ECF No. 96 at 1.) In support of his contention, Taylor attaches documents showing his arrest records for the relevant underlying crimes, which appear to have occurred in 2003. (*See* ECF No. 96–1.)

Second, Taylor argues that two points should not have been assigned to a sentence imposed on February 5, 2003. (ECF No. 96 at 2.) For this argument, Taylor contends that he "received two points for attempting to elude which he was given 11 months on 2-5-03. The defendant's relevant conduct started on 2-20-13 that's over 10 years . . . don't count sentence[s] that were imposed more than ten years before the present offense." (ECF No. 99 at 1–2.)

Third, Taylor argues that two points should not have been added when he committed the underlying offense while serving a term of supervised release for his possession of a firearm

offense because the same firearm possession charge was assessed three points under a different provision of the Sentencing Guidelines. (ECF No. 98 at 2.)

After reviewing Taylor's *pro se* motions in which he argues a miscalculation of his criminal history points, the Court ordered the "Probation Office to file its position on the Defendant's Motions regarding the calculation of his criminal history points no later than September 15, 2020." (Aug. 7, 2020 Order, ECF No. 101.) The Court further ordered the United States to respond to the Motions no later than October 1, 2020. (*Id.*)

On September 14, 2020, the Probation Office addressed each of Taylor's arguments, concluding that two of his arguments lacked merit but finding one well-grounded in United States Sentencing Guidelines Manual § 4A1.2(k). (ECF No. 102.) In support of Taylor's argument, the Probation Office found that Taylor should not have been assigned two points for the sentence imposed on February 5, 2003, because that sentence was imposed more than ten years before his underlying February 20, 2013 offense. (*Id.*) The Probation Office concluded "that the defendant's total criminal history points is eleven (11), and his Criminal History Category is V." (*Id.*)

On October 1, 2020, the United States filed a response in opposition to Taylor's *pro se* motions. (Opp'n, ECF No. 103.) The United States presents three arguments in opposition to Taylor's motions:

> *First*, the defendant's motions for clerical error are, in reality, successive § 2255 motions. Properly reframed, they also fail. The defendant has not obtained proper authorization from the Court of Appeals, creating a jurisdictional defect; claims of advisory Guideline error are not cognizable on collateral review; and the defendant has not overcome his procedural default. *Second*, defendant's attempts to recalculate the Guidelines are not clerical errors under Rule 36. *Third*, on the merits, two of the defendant's three attempts to recalculate his Guidelines range are unavailing.

(*Id.* 4) (emphasis in original).

The United States recognizes that "the district court improperly applied two criminal history points for a July 1, 2002 attempt-to-elude conviction that occurred over ten years from his present offense." (*Id.* 17.) The United States "agrees with the Probation Office that [Taylor], properly calculated, has 11 criminal history points and a Criminal History Category of V. With his offense level of 27, his Guidelines range is 120–150 months' imprisonment," rather than the previously calculated 130 to 162 months' imprisonment. (*Id.* 18.) The United States suggests that Taylor's 130-month sentence should stand because "the defendant's sentence is still at the low end of this [revised Guidelines] range." (*Id.*)

The United States acknowledges, however, that the Fourth Circuit's recent opinion in *United States v. Vanderhorst* states "Rule 36 may serve as an appropriate vehicle for a defendant to obtain resentencing when a clerical error likely resulted in the imposition of a longer sentence than would have been imposed absent the error." 927 F.3d 824, 827 (4th Cir. 2019). Nonetheless, the United States asks that the Court reject Taylor's motions "as an attempt to circumvent the procedural barriers applicable under 28 U.S.C. § 2255 and as inconsistent with the narrow focus of Rule 36." (Opp'n 18.) Alternatively, the United States requests a *de novo* resentencing for Taylor. (*Id.*)

## II. Standard of Review

Because Taylor proceeds *pro se*, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). The Court construes Taylor's Motions as seeking relief pursuant to Rule 36 of the Federal Rules of

Criminal Procedure. For context, however, and based on the United States' arguments, the Court first reviews how a prisoner may seek postconviction relief through 28 U.S.C. § 2255.

### A. Section 2255 Motions Seeking Postconviction Relief

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426–27 (1962) (citing 28 U.S.C. § 2255); *United States v. Battle*, 927 F.3d 160, 163 n.1 (4th Cir.), *cert. denied*, 140 S. Ct. 671 (2019) (summarizing requirements found in § 2255(b) for collateral relief).

"[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citation omitted). In other words, the movant must establish: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or, (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018).

Claims previously litigated on direct appeal are generally not cognizable under § 2255. *Schlup v. Delo*, 513 U.S. 298, 318–19 (1995). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280, 282. (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999)); *see also Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that where the petitioner "failed properly to raise his

claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'") (citation omitted). Thus, to proceed under § 2255, Taylor must show that he has not procedurally defaulted his claim and that his sentence (1) contains an error of constitutional magnitude, (2) was imposed outside the statutory limits, or (3) appears fundamentally unlawful.

### B. Rule 36 of the Federal Rules of Criminal Procedure

Taylor's motions implicate another procedural vehicle in the postconviction context: Federal Rule of Criminal Procedure 36. Rule 36 provides that "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. "There is no dispute that a PSR . . . constitutes an 'other part of the record' amenable to correction under Rule 36." *United States v. Vanderhorst*, 927 F.3d 824, 826 (4th Cir. 2019).

The Fourth Circuit recently explained that Rule 36 may serve as a means "for a defendant to obtain resentencing when a clerical error likely resulted in the imposition of a longer sentence than would have been imposed absent the error." *Id.* at 827 (citing *United States v. Powell*, 266 Fed. App'x 263, 265 (4th Cir. 2008)). While finality in judicial proceedings serves an important interest and requires that judicial and substantive errors be laid to rest after specified time periods; when an error is purely clerical, like a scrivener's error; or recording error, "'the policy of finality is trumped and a court is authorized to correct the error at any time.'" *Id.* (citing *Powell*, 266 Fed. App'x at 266). "Forcing a defendant . . . to spend years longer in prison solely due to a data entry error for which he had no responsibility serves no legal, judicial, or public interest, is manifestly unjust, and is why Rule 36 exists." *Id.*

9

The Federal Rules of Criminal Procedure do not define "clerical error," but courts have held that a clerical error "must not be one of judgment or even misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature." *Connor v. United States*, 2011 WL 1322402, *3 (D. Md. Apr. 1, 2011) (quoting *United States v. Robinson*, 368 F.3d 653, 656 (6th Cir. 2004)). In *Vanderhorst*, for example, the defendant's PSR erroneously classified his prior conviction as "conspiracy to sell and deliver cocaine," while he was actually convicted of "conspiracy to traffick cocaine by transportation," and as a result this conviction erroneously served as a predicate offense for the career offender enhancement at the time of sentencing. 927 F.3d at 825–26. The Fourth Circuit held that this "scrivener's or recording error" could be corrected under Rule 36, and the district court also possessed authority to order resentencing based on such error. *Id.* at 827. Because the defendant had three other convictions that qualified him for career offender status, the Fourth Circuit nevertheless affirmed the district court's denial of postconviction relief in that instance. *Id.* at 828 (affirming "the district court's judgment because Defendant's three remaining convictions were sufficient to sustain his classification and sentencing as a career offender under U.S.S.G. § 4B1.1").

Similar to *Vanderhorst*, the United States Court of Appeals for the Fifth Circuit has required the correction of a clerical error where the PSR listed the offense of conviction as involving cocaine, when it had in fact involved marijuana. *United States v. Mackay*, 757 F.3d 195, 196 (5th Cir. 2014). In reaching its conclusion, the Fifth Circuit declined to hold such error harmless because it affected the defendant's substantial rights. *Id.* at 200.

Beyond errors contained in a PSR, Rule 36 has also been used to make corrections in a judgment for an omitted forfeiture order, an incorrect statute citation, an erroneous restitution amount, and to fix a reference to a lesser included offense to which the defendant pled guilty

10

rather than to the charge contained in the indictment. *Powell*, 266 Fed. App'x at 266 (internal citations omitted); *see also United States v. McLean*, 2012 WL 259322, *2 n.8 (D. Md. Jan. 25, 2012) (collecting cases and citing examples of clerical errors including written judgment stating defendant had been convicted under statute different from that orally imposed by the court; statement in judgment that defendant was sentenced to 77 months in prison when court had orally imposed 83-month sentence; and statement in written judgment that sentences would run concurrently when court had pronounced that they would run consecutively); *cf. Black v. United States*, No. 2:94cr15, No. 2:14cv35, 2015 WL 12916995, *1 (E.D.N.C. Oct. 20, 2015), *aff'd* 645 F. App'x 284 (4th Cir. 2016) (denying Rule 36 motion to correct drug quantity in PSR when court made the drug quantity findings itself and noting that what petitioner actually sought was to amend the amount of drugs found by the court at sentencing).

The United States Court of Appeals for the Third Circuit has compared Rule 36 to Federal Rule of Civil Procedure 60(a), explaining that the rule "is limited to the correction of clerical mistakes; it encompasses only errors mechanical in nature, apparent on the record, and not involving an error of substantive judgment." *United States v. Bennett*, 423 F.3d 271, 281 (3d Cir. 2005) (internal quotation marks and citations omitted). The United States Court of Appeals for the Eleventh Circuit has similarly stated that Rule 36 may not be used "to make a substantive alteration to a criminal sentence." *United States v. Portillo*, 363 F.3d 1161, 1164 (11th Cir. 2004) (internal quotations omitted).

### III. Analysis

The Court must consider whether Taylor's claims regarding the calculation of his criminal history points may be considered clerical errors subject to correction under Rule 36, or whether his request for relief constitutes a collateral attack on his sentence subject to the

11

parameters of § 2255. The Court finds that Rule 36 controls his meritorious claim, as Taylor identifies a clerical error in his PSR, which the Court may correct "at any time." Fed. R. Crim. P. 36. The Court finds that Taylor's other two claims fail regardless of the procedural vehicle under which he proceeds.

### A. The Court Will Dismiss Two of Taylor's Claims Because They Lack Merit Regardless of the Procedural Vehicle Under Which He Seeks Relief

Taylor raises three claims challenging the calculation of his criminal history points. Two of Taylor's claims lack merit because the PSR correctly calculated and assigned Taylor the corresponding criminal history points. Therefore, regardless of the procedural vehicle Taylor uses to obtain relief, either § 2255 or Rule 36, two of his claims will not succeed.

First, the Court finds that Taylor appropriately received four criminal history points for one charge of eluding police and one charge of identity fraud because these two charges emanated from different charging instruments and the sentencings occurred on different days. (*See* ECF No. 102.) Although Taylor attaches to one of his *pro se* motions a document that appears to show a portion of his criminal history, the Court sees: (1) an eluding police charge dated July 1, 2002; (2) an eluding police charge dated August 23, 2003; and, (3) an identity fraud charge dated August 23, 2003. Taylor states that his offenses dated August 23, 2003 should not have received multiple criminal history points because these offenses "occurred on the same occasion and as part of a single common scheme or plan." (ECF No. 96 at 1.) Taylor avers he was arrested on both charges "but just was sentence[d] on different dates." (*Id.*)

> Pursuant to the 2013 Sentencing Guidelines, which apply to Taylor:
>
> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the

12

sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S. Sent'g Guidelines Manual § 4A1.2(a)(2) (U.S. Sent'g Comm'n 2013). It does not appear that Taylor had an intervening arrest for his August 23, 2003 offenses, but Probation avows that "these two charges were contained in separate charging instruments," (ECF No. 102), and the records show the state court sentenced him on different days. Therefore, the Court did not err when it assigned Taylor four criminal history points for these prior offenses.

Second, the Court finds that it correctly assigned to Taylor two criminal history points pursuant to Sentencing Guidelines § 4A1.1(d), which requires adding two points "if the defendant committed the instant offense while under any criminal justice sentence." Taylor committed his 2013 offense while serving a supervised release term for a 2008 offense. In accordance with the Sentencing Guidelines, Taylor received two points despite the same charge resulting in three additional points under Sentencing Guidelines § 4A1.1(a). As a result, regardless of whether Taylor seeks relief under § 2255 or Rule 36, two of his claims will fail. Accordingly, the Court will deny in part Taylor's motions and will dismiss those two claims.

**B.    The Miscalculated Criminal History Points for the February 2003 Sentence Constitute a Scrivener's Error Because the 2013 PSR Copied the Criminal History Section from a 2008 PSR and Did Not Alter the Criminal History Points Associated with that Offense and the Corresponding Sentence Imposed in February 2003, More than 10 Years from Taylor's Underlying 2013 Offense**

After finding that Taylor has identified a clerical error subject to Rule 36, the Court will grant Taylor relief on his claim, finding that he should not have been assessed two criminal history points for his February 2003 sentence based on his July 1, 2002 eluding police conviction. As a result, the Court will reduce Taylor's sentence ten months to 120 months' imprisonment, to the low end of the corrected Guidelines range.

13

As the Probation Office and the United States each recognize, Taylor correctly identified an error in the calculation of his criminal history points: he should not have received two criminal history points for his February 2003 sentence stemming from his July 1, 2002 eluding police conviction. Taylor thus should have been sentenced based on a Criminal History Category of V rather than VI. A correct calculation of his criminal history points would result in Taylor being placed in Criminal History Category V, lowering his Sentencing Guidelines range from 130 to 162 months' imprisonment to 120 months to 150 months' imprisonment. (*See* Opp'n 18.)

Seeing this error, the Court must determine how best to proceed. On the one hand, Taylor has identified an error that significantly lowers his Sentencing Guidelines range, implicating his liberty interests, the integrity of the justice system, and basic notions of fairness. On the other hand, caselaw, statutes such as § 2255, and the Federal Rules of Criminal Procedure encourage the Court to enforce finality when criminal sentences are imposed, even when errors arise. Weighing these competing interests, the Court must find here that fairness trumps finality.

The Court first determines that Taylor has identified a clerical error subject to Rule 36. While the Court acknowledges that Taylor's request pushes the bounds of what it may correct through Rule 36, the Court points to an important wrinkle extant in this case: the 2013 PSR stated that "[m]uch of the information contained in [the criminal history] section of the report was obtained from the Federal presentence report prepared for this defendant in 2008, in Docket No. 3:08CR00143." (PSR ¶ 15.) The miscalculation therefore derives from a traditional scrivener's mistake: mere copying of his previous criminal history points coupled with a failure to adjust the corresponding criminal history points utilizing the new 2013 offense date.

Moreover, Taylor does not raise a substantive legal challenge to the calculation of his criminal history points but questions whether a rule that prohibits counting sentences imposed more than ten years before the instant offense should have applied to the calculation of his criminal history points. In contrast to the issue Taylor raises here, other courts have rejected claims brought under Rule 36 that challenge whether a predicate offense counts toward a career offender sentence enhancement, which often involves legal analysis. *See, e.g., United States v. Dillman*, No. 5:11cr44, 2019 WL 7169786, at *3 (W.D. Va. Dec. 24, 2019) (denying Rule 36 motion where defendant argues that the convictions do not meet the definition of "prior felony conviction" because such arguments addressed substantive legal issues). Similarly, courts have rejected altering or imposing a supervised release term through Rule 36. *See United States v. Robinson*, 368 F.3d 653, 655, 657 (6th Cir. 2004) (holding that district court may not correct judgment to impose an erroneously omitted supervised release term). But Taylor does not raise a substantive legal argument or otherwise try to alter the terms of his sentence. Rather, he seeks only the application of a ten-year rule that he himself, a *pro se* litigant with a GED, identified while incarcerated and without the aid of legal counsel.

The Court next finds that correcting this error does not require a *de novo* resentencing as the United States suggests, but a simple adjustment of Taylor's sentence to the low end of the corrected Guidelines range. On a different occasion in the postconviction context, this Court has observed that recalculating a movant's Guidelines range "requires only a review of the information contained in the presentence report and a mechanical modification based on application of the Guidelines," not a "*de novo* resentencing." *United States v. Black*, 388 F. Supp. 3d 682, 690 (E.D. Va. 2019). The Court finds the same mechanical modification appropriate here: using the corrected 120 months to 150 months' Guidelines range, the Court

15

will simply shift Taylor's sentence to the low end of that range. This results in a sentence reduction of ten months, from 130 months to 120 months' imprisonment, for Taylor.

Noting that Taylor did not object to the PSR and failed to raise this issue on appeal, the Court understands the United States' concerns regarding finality. Indeed, Counsel for the United States has acted with commendable candor and acknowledged its responsibility to the Court, raising important developments in caselaw and valuable arguments in response to Taylor's request for relief. Justice must prevail here. As this Court has previously remarked, "[a]llowing the procedural posture of the case to overrun an individual's liberty undermines the integrity of the Court system and the value society places on judges to get things right." *Black*, 388 F. Supp. 3d at 689.

The Court makes clear that this decision will not allow Rule 36 to open the door widely for postconviction relief and allow complicated recalculations of Guidelines ranges in postconviction proceedings involving substantive legal issues or analyses. The Court's finding is a narrow one and this case does not raise such complex issues. Rather, Taylor's motions turn on unique facts: his PSR was primarily copied from a prior 2008 PSR, and the Court overlooked the need to adjust his criminal history points derived from his 2003 sentence for his 2013 offense. Given the simple application of the ten-year rule set forth in the Guidelines, the Court finds that correcting this error and reducing Taylor's sentence ten months to 120 months, the low end of the corrected Guidelines range, better serves the needs of our judicial system.

## IV. Conclusion

For the foregoing reason, the Court will grant in part and deny in part Taylor's motions, (ECF Nos. 96, 98, 99, 100), and reduce Taylor's sentence to 120 months' imprisonment. All other aspects of the judgment, including his four-year supervised release term, will remain unchanged. An appropriate order shall issue.

/s/ M. Hannah Lauck
United States District Judge

Date: January 5, 2021
Richmond, Virginia